IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| ANTHONY PERRY<br>Plaintiff, | * * * * | |
| v. | * * | Civil Action No. 09-cv-02672-AW |
| SECRETARY GARY F. LOCKE<br>Defendant. | * * * | |

*************************************************************************

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment. Doc. No. 29. For the reasons articulated below, the Court GRANTS the summary judgment aspect of Defendant's motion, so the Court need not address Defendant's argument for dismissal under Federal Rule of Civil Procedure 12(b)(6).

## I.      FACTUAL & PROCEDURAL BACKGROUND

The following facts are not disputed by the Parties, unless otherwise noted. Plaintiff Anthony Perry ("Perry"), an African American male, has been employed by the United States Census Bureau since 1986. Prior to and during his employment with the Census Bureau, Perry has earned Bachelor's Degrees in Chemistry (University of Delaware, 1983) and Computer and Information Systems (University of the District of Columbia, 1986), Master's Degrees in Business Administration (University of Texas at Austin, 1993) and Information Technology Management (University of Maryland, 2005), and an Executive Certificate for CIOs (University of Maryland, 2004).

In 1996, he secured his first supervisory position as a Supervisory Computer Scientist. Later that year, he transferred to another supervisory position with the Decennial Systems and Contracts Management Office, where he managed approximately ten computer scientists. When that project was completed in 2000, Plaintiff resumed working in non-supervisory roles. *See* Doc. No. 29, Ex. 1 at 2-3.

In 2006, he was reassigned to an Information Technology Specialist position within the Business Planning Staff of the LAN Technology Support Office (another non-supervisory position). His supervisor was Thomas Meerholz ("Meerholz"). *See* Doc. No. 29, Ex. 2 at 2. During the rating period for FY 2007, Plaintiff received a three out of five. *See* Doc. No. 29, Ex. 4 at 12.

During August 2007, two vacancy announcements for GS-15 Supervisory IT Specialist positions were posted on the Census Bureau website. *See* Doc. No. 29, Ex. 5-6. Both announcements indicated that "[t]here is no substitute of education for specialized experience for this position," Doc. No. 29, Ex. 5 at 2; Doc. No. 29, Ex. 6 at 2, and the accompanying questionnaires asked applicants several detailed questions about their supervisory and leadership experience, *see* Doc. No. 29, Ex. 5 at 11-12; Doc. No. 29, Ex. 6 at 12.

Plaintiff applied for both positions. *See* Doc. No. 29, Ex. 7-8. Plaintiff was one of ten internal candidates who applied for one of the positions, and one of nine for the other. *See* Doc. No. 29, Ex. 9-10. Meerholz, the selecting official, asked F. Grailand Hall ("Hall"), an African American, Doc. No. 29, Ex. 2 at 8, and Scott Williams ("Williams") to interview the candidates and report back to him. *See id.* at 7-8. Hall and Williams interviewed the candidates, including Plaintiff, and recorded notes of their interviews.

Plaintiff alleges that the notes were destroyed (and that Meerholz admitted as much during the EEO investigation), but Defendant claims that it produced the notes during the course of this litigation. The notes produced by Defendant indicate that Jason Schaufele ("Schaufele") and Patricia Musselman ("Musselman")—the eventual selectees—were the strongest candidates.[1] *See* Doc. No. 29, Ex. 2 at 8; Doc. No. 29, Ex. 17 at 2; Doc. No. 29, Ex. 18 at 2 & Attachments A-C.

Both of the selectees provided optimistic self-assessments of their leadership experience in their job applications, *see* Doc. No. 29, Ex. 11 at 4-6; Doc. No. 29, Ex. 12 at 6-11, whereas Perry ranked his own leadership experience more modestly on several questions, *see* Doc. No. 29, Ex. 7 at 4-6; Doc. No. 29, Ex. 8 at 4-6.

Meerholz selected Musselman and Schaufele for the vacancies on or about December 26, 2007. His stated reasons for selecting them were their superior qualifications (particularly recent supervisory experience) and the recommendations of the interviewers. *See* Doc. No. 29, Ex. 2 at 7-8; Doc. No. 29, Ex. 13.

Prior to his non-selection, Plaintiff engaged in protected EEO activity in 2006, in March 2007, and in June 2007. After learning that he was not selected, Plaintiff filed another EEO complaint, arguing that his non-selection for the vacancies, his FY 2006 performance rating, and his office accommodations were unfair, discriminatory, and retaliatory. *See* Doc. No. 29, Ex. 15 at 3-4. The EEO's elaborate Final Agency Decision on July 10, 2009 dismissed the complaint for lack of evidence of discrimination or retaliation. *See* Doc. No. 29, Ex. 16.

---

[1] According to the Complaint, Pamela Mosley, then-Assistant Chief of the Telecommunications Office (and Williams's deputy), also sat in on the interview, though she did not report to Meerholz. In the EEO's subsequent investigation, Mosley allegedly testified by affidavit that Plaintiff "interviewed very well" and that his educational credential stood out "leaps and bounds" above the other applicants. Compl. ¶ 13. Plaintiff does not point to any affidavits or other evidence to substantiate this claim.

Plaintiff then filed the Complaint in this case, seeking recovery under Title VII, 42 U.S.C. § 2000e-2(a) and § 2000e-3(a), on theories of discrimination and retaliation. When Defendant filed its original Motion to Dismiss, or Alternatively, for Summary Judgment, Plaintiff moved for extensions of time to respond and, ultimately, amended the Complaint. *See* Doc Nos. 6-10. Defendant renewed its motion, and Plaintiff again requested extensions of time and ultimately sought leave to file the Second Amended Complaint. *See* Doc Nos. 14-19. The Defendant renewed its motion yet again, which is now pending before the Court. *See* Doc. No. 29.

## II.    STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere

speculation or the building of one inference upon another." *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**B.  Legal Standard for Title VII Discrimination and Retaliation Claims**

Racial discrimination and retaliation claims under Title VII are both governed by the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under this three-part framework, the plaintiff must first establish a *prima facie* case of retaliation or discrimination. *See id.* at 802.

To establish a *prima facie* case of discrimination, the plaintiff must show "by a preponderance of the evidence that (1) [he] is a member of a protected class; (2) [his] employer had an open position for which [he] applied or sought to apply; (3) [he] was qualified for the position; and (4) [he] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996).

To establish a *prima facie* case of retaliation, the plaintiff must show "(1) plaintiff engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

If the plaintiff can make out a *prima facie* case, "the burden shifts to the employer to establish a legitimate non-retaliatory reason for the action." If the employer does so, "the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

# III.  ANALYSIS

## 1.  *Prima Facie Case*

The Plaintiff has successfully made out a *prima facie* case on its discrimination claims. Defendant only disputes the qualification element of the *prima facie* case: it is undisputed that Plaintiff is a member of a protected class (African American), that he applied for a vacant position, and that he was rejected while two Caucasian applicants were accepted. The disputed qualification element is also satisfied: the inquiry at the *prima facie* case stage is not whether the Plaintiff was the most qualified for the job, but simply whether he "was qualified for the position." *Evans*, 80 F.3d at 959; *see also Tex. Dep't of Comty. Affairs V. Burdine*, 450 U.S. 248, 253 (1981) ("[T]he burden of establishing a *prima facie* case of disparate treatment is not onerous."). Plaintiff has worked for the Census Bureau for decades, has extensive and relevant educational background, and has had relevant supervisory experience (albeit not as recent as that of the applicants he was competing against). Thus, Plaintiff has successfully made out a *prima facie* case of discrimination.

However, it is a close case whether Plaintiff can establish the causation element of his retaliation *prima facie* case. He has presented no evidence that Meerholz had retaliatory motives for not selecting him other than the facts that: Plaintiff engaged in protected activity; Meerholz knew about the activity; and Meerholz took adverse employment action against him approximately six months after he filed his most recent EEO complaint. These allegations are generally not enough, because "[k]nowledge [of protected activity by the selecting official] alone . . . does not establish a causal connection." *Price*, 380 F.3d at 213. Exceptions can be made when the "temporal proximity" is "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (internal quotation marks omitted).

The Court declines to resolve this issue, because even if Plaintiff could make out a *prima facie* case, his retaliation claims would nonetheless fail. As discussed in the next section, the Defendant has provided a legitimate reason for his decision other than discrimination or retaliation, and Plaintiff has failed to provide adequate evidence that Defendant's reason is pretextual.

2. *Defendant's Legitimate, Non-Discriminatory Reason for Non-Selection*

Defendant provides a legitimate and non-discriminatory / non-retaliatory motivation for non-selection to rebut Plaintiff's *prima facie* case: Meerholz sought to select the best-qualified applicants for the vacancies. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960; *see also Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005) (stating that the plaintiff "cannot establish her own criteria for judging her qualifications for the promotion. She must compete for the promotion based on the qualifications established by her employer.").

Defendant presents several strands of evidence that convincingly show not only that Meerholz was motivated by the relative qualifications of the applicants, but also that the ultimate selectees were in fact more qualified than Plaintiff: (1) the vacancy announcements expressly stated that education (the area where Plaintiff claims he was the strongest candidate) cannot substitute for supervisory experience (the criterion that Meerholz claimed to base his decision on), (2) Plaintiff ranked his leadership skills lower in several key areas than did the selectees on the leadership self-assessments included in the job application, (3) Plaintiff received lower scores for his interview than the ultimate selectees (in fact, his score was the lowest of all the interviewees), (4) Plaintiff had received a mediocre performance review for FY 2007, and (5)

Meerholz's e-mails and affidavits indicate that recent supervisory experience and other legitimate qualification-related factors were the true bases for his decisions.

The Court is not convinced that Meerholz's stated reason for not selecting Plaintiff is a pretext for discrimination or retaliation. First, Plaintiff's central argument—that Meerholz is responsible for his lack of supervisory experience by declining to assign him to various acting supervisory positions—fails to address the central issue in the case: is Plaintiff so clearly more qualified than the selectees that Defendant's stated qualification rationale must be pretextual? Plaintiff cannot demonstrate his qualifications by showing that Meerholz is responsible for his lack of qualifications. Evidence of Meerholz's actions would only be relevant if Plaintiff could show that Meerholz's past denials of opportunity to Plaintiff were based on racial or retaliatory motives, because that showing would bolster the inference that his non-selection of Plaintiff for the recent vacancies was based on similar motives. However, Plaintiff has provided only a thin evidentiary record regarding Meerholz's past denials of opportunity to Plaintiff, and nothing in that record suggest that Meerholz was motivated by racial animus or retaliation.

Second, Plaintiff argues that the Court should infer discriminatory motive from Meerholz's alleged destruction of interview notes, even though the Defendant has now produced copies of those notes in discovery and provided affidavits authenticating them, *see* Doc. No. 29, Ex. 17; Doc. No. 29, Ex. 18 Att. A, thus establishing that they were not destroyed. Plaintiff nonetheless contests the authenticity of the produced notes, relying only on the EEO investigator's statement that Defendant was unable to locate the interview notes during the EEO investigation, *see* Doc. No. 31-2 and the EEO Final Action Decision's reference (presumably relying on the EEO investigator's statement) that the documents had been destroyed, Doc. No. 29, Ex. 16 at 38. The Court holds that, in the face of affidavits and testimony from Meerholz and

Hall authenticating the notes produced by Defendant in this litigation, the Defendant's previous difficulty finding the notes is insufficient for a reasonable juror to conclude that the documents produced are forgeries and the real documents destroyed.

Third, Plaintiff's attempt to argue that his superior educational background renders Defendant's qualifications-related rationale pretextual is unconvincing. "As a result of the defendants' decision to base the promotion decision on the core functional competencies listed in the job description and not on the educational levels of applicants, [Plaintiff] cannot rely on [his] educational background to establish that the defendants' reasons for promoting [the selectees] was a pretext for discrimination." *Anderson*, 406 F.3d at 270. The vacancy announcements expressly state that superior education cannot substitute for relevant experience, and it is undisputed that the selectees had more extensive and more recent supervisory experience than Plaintiff. Under these circumstances, Plaintiff cannot demonstrate pretext.

Fourth, Plaintiff, relying on *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000), argues that the Court should disregard testimony by Defense witnesses that point to a legitimate and non-discriminatory motive, particularly Meerholz's e-mail and declarations. Plaintiff's argument relies on a clear misreading of *Reeves*, which says the opposite of what Plaintiff urges: "in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Id.* at 150. If the Court disregarded Defendant's testimony regarding the reason for its decision, the second step of the *McDonnell* framework—which allows the Defendant to rebut Plaintiff's *prima facie* case with evidence of a legitimate motive— would be impossible to establish and meaningless.

Finally, summary judgment should not be denied as premature. Ordinarily, summary judgment is appropriate only after "adequate time for discovery." *Celotex Corp.*, 477 U.S. at 322. However, "the nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled." *Evans*, 80 F.3d at 961. Plaintiff only invokes the importance of awaiting discovery in one sentence toward the end of its opposition brief, *see* Doc. No. 31 at 10, and the request contained in that sentence is unpersuasive: Plaintiff seeks discovery from Hall and Williams to show that Meerholz fabricated the interview notes, even though the Court already has affidavits from Hall and Meerholz authenticating the notes, and no serious evidence offered by Plaintiff to think otherwise. Thus, Plaintiff cannot prove that the Defendant's asserted reason for its decision is pretextual, so Defendant is entitled to summary judgment in its favor.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment is GRANTED.  A separate Order will follow.


   October 29, 2010                          /s/
        Date                                Alexander Williams, Jr.
                                        United States District Judge